UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

TRACY H.[1], )
 )
    Plaintiff, )
 )
v. ) CIVIL NO. 1:21cv78
 )
KILOLO KIJAKAZI, Acting )
Commissioner of Social Security, )
 )
    Defendant. )

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(a). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.

2

2. The claimant has not engaged in continuous substantial gainful activity since October 15, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: obesity; migraine headaches with blurred vision; depression; and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). In addition he can stand, sit, or walk for six hours (each) out of an eight-hour workday; can never climb ladders, ropes or scaffolds, and must avoid even moderate exposure to moving machinery and unprotected heights. With work that can be learned in six months or less; is able to remain on task in two-hour increments; and work with occasional interaction with coworkers and no interaction with the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 7, 1980 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2010, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 12-22).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits,

3

leading to the present appeal.

Plaintiff filed his opening brief on January 6, 2022. On March 24, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on April 7, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ erred by not including qualitative interaction limitations in the RFC. Plaintiff acknowledges that the RFC limits him to "occasional contact" with co-workers, but argues that the RFC should have also limited him to "superficial contact" with co-workers due to his difficulty getting along with co-workers. Plaintiff relies on

4

the opinion of Dr. Boen, the agency's examining psychologist, who opined that Plaintiff "would have difficulty getting along with coworkers". (Tr. 532).

The ALJ's decision on this point is as follows:

A State agency psychological consultant initially reviewed the evidence of mental impairment and while they noted a [sic] mental health issues as "severe" they did not offer correspondingly consistent B criteria, nor did they find limitations in the Residual Functional Capacity assessment for mental health issues. (Exhibit 3A) At the time of reconsideration they did have B criteria consistent with a severe mental health impairment, and included limitations and restrictions to accommodate it, (Exhibit 5A). Specifically, the later State agency assessment determined the claimant had mild limitations in understanding, remembering, or applying information and adapting or managing oneself; but moderate limitations in interacting with others and concentrating, persisting or maintaining pace. The consultant concluded the claimant can manage occasional contact with the public but sustained, intensive interpersonal contact would be precluded. He appears to work best alone, in semi-isolation from others or as part of a small group and able to maintain at least a minimal level of relationship with others (Exhibit 5A). The State agency's assessments are only somewhat persuasive. Regarding the initial evaluation, little weight is given as the finding of a severe mental health impairment, with B criteria inconsistent with that finding, and since only social limits were addressed in the residual functional capacity despite finding a moderate limitation in concentration, persistence or pace. The undersigned limited the claimant to work that can be learned in six months or less with ability to remain on task in two-hour increments to address his concerns about stress and distraction around others, and difficulty performing multi-step tasks to which he testified. Social limitations accommodate the claimant's anxiety around crowds of more than seven people.

Dan Boen, Ph.D., consultative examiner, stated the claimant would not have trouble understanding what he was asked to do on a job, would not have trouble remembering what he was asked to do on a job, would not have difficulty being able to concentrate on the job, would not have difficulty being able to stay on task, and would not have difficulty getting along with a boss, but would have difficulty getting along with coworkers. He further stated the claimant could not handle money (Exhibit 7F/5). This assessment is partially persuasive in terms of understanding, remembering or applying information and social interaction issues. However, the undersigned also limited the claimant to no interaction with the general public due to the claimant's irritability and anxiety issues around crowds. The consultative examiner's statement the claimant could not handle money is not persuasive since he was able to perform basic math calculations and his

5

>intelligence level was normal. In addition, the other evidence of record does not support such a limitation as no cognitive deficits are noted.
>
>Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the objective medical record, clinical findings, consultative examination in part, and State agency assessment in part.

(Tr. 20-21).

Plaintiff contends that the ALJ "played psychologist" and that she "assumes the role of psychologist and expropriates the internal testing and clinical data compiled by the examining psychologist in order to render his [sic] own psychological interpretations and findings." (Pl. Brief at 11). However, Plaintiff does not direct the Court to any specific language in Dr. Boen's reports that were misinterpreted. Rather, Plaintiff's brief is rambling and chaotic, ranging from an ode to the education levels of psychologists to an exposition on the diagnostic criteria for social anxiety disorder. Whether Plaintiff is actually arguing that the ALJ should have found social anxiety disorder a severe impairment is impossible to discern.

Plaintiff also relies on the prior administrative findings of the State agency psychological consultant at the reconsideration level of administrative review, which included that Plaintiff retained the ability to "relate on a superficial and ongoing basis with co-workers and supervisors", is able "to perform a work routine in a work environment that would not require intense or frequent interactions with others" and that Plaintiff "would appear to work best alone, in semi-isolation from others or as part of a small group and able to maintain at least a minimal level of relationship with others". (Tr. 102). With respect to social interaction, the psychologist found that Plaintiff was not significantly limited in the ability to ask simple questions or request assistance, and was also not significantly limited in the ability to get along with coworkers or

6

peers. (Tr. 101). The ALJ considered the consultant's findings and found them only "somewhat persuasive". (Tr. 20). As the ALJ explained, she accommodated what both the State agency consultant and the ALJ found were "moderate" limitations in interacting with others and with regard to concentrating, persisting, or maintaining pace (Tr. 14, 97) and addressed Plaintiff's concerns in his testimony about stress and distraction around others, difficulty performing multi-step tasks, and anxiety around crowds of more than seven people by limiting Plaintiff to work that could be learned in six months or less, required the ability to remain on task for only two-hour increments, and the social limitations of occasional interaction with coworkers and no interaction with the general public. (Tr. 20).

      The ALJ did not fully adopt the findings of the State agency psychological consultant, but also considered Plaintiff's own testimony. At the hearing, Plaintiff testified that his medications for anxiety were working well "for the most part," but there were still situations where he had trouble, like "crowds and things". (Tr. 45–46). Plaintiff explained that because he had been assaulted in a crowd of people he did not like situations "where there's a bunch of people, potentially behind me because I was struck from behind." (Tr. 46–47). On further questioning, he defined a crowd as five to seven people, and that he would avoid crowds, such as by going to a grocery store in the off hours. (Tr. 47–48). When Plaintiff testified about why he stopped working or difficulties he had while trying to work, he stated concerns such as "my body would not let me" (Tr. 39–40), issues with memory (Tr. 51–52), and feeling exhausted and not "mentally there" (Tr. 54–55, 59). Plaintiff also mentioned headaches caused by stress and anxiety, but the triggers he discussed were heavy physical activities that would raise his blood pressure and produce stronger headaches. (Tr. 57). Plaintiff testified to having less patience and becoming easily

7

irritated, such as becoming defensive when corrected. (Tr. 59). He testified that he "probably would not" get along with coworkers and bosses but did not elaborate. (Tr. 60). In a Function Report completed in July 2015, Plaintiff indicated he did not have any problems getting along with family, friends, neighbors, or others, but did not like being in crowds of more than five people and further indicated he was able to get along with authority figures and was never fired or laid off from a job because of problems getting along with other people. (Tr. 245–46).

It is clear from the ALJ's decision that she adequately considered all of the opinions related to Plaintiff's problems with social interaction. Although Plaintiff insists that a limitation to "superficial interaction" should have been included in the RFC, the ALJ considered the evidence on that point and found that only a limitation to "occasional interaction" was necessary. While there is some evidence that Plaintiff could relate on a superficial basis with coworkers (Tr. 102), the evidence does not compel a finding that Plaintiff is limited to <u>only</u> superficial interactions. In fact, the same report found that Plaintiff was not significantly limited in the ability to get along with coworkers. (Tr. 101). To the extent that this is a conflict in the evidence on this point, it is the job of the ALJ, and not this Court, to weigh the conflicting evidence. Thus, substantial evidence supports the ALJ's RFC assessment, and this Court declines Plaintiff's invitation to reweigh the evidence.

There is also no indication that even if the RFC included limitations to only "superficial interaction" with co-workers, that this would have changed the nature or number of jobs that Plaintiff could perform. The ALJ held that Plaintiff could perform jobs such as hand packer, laundry worker, laundry folder, classifier sorter and checker. None of these jobs appear to require more than superficial interaction with co-workers. Plaintiff was represented by counsel at the

hearing and counsel did not question the vocational witness about whether the job base would be eroded if Plaintiff were limited to superficial interaction with co-workers.

This Court finds that there is no basis for remand on this point. There is no medical evidence that compels a limitation in the RFC to only "superficial interaction" with coworkers. Further, a remand would be likely be futile because there is no evidence that, even with a superficial interaction limitation, there would not be a substantial number of jobs that Plaintiff could perform.

Next, Plaintiff argues that the ALJ failed to properly analyze his headaches. An ALJ's evaluation of a claimant's subjective allegations regarding pain or other symptoms is a two-step process. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029; *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). First, objective medical evidence must demonstrate the existence of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 404.1529(b); SSR 16-3p at *3–4. If this threshold is passed, the ALJ then considers the intensity, persistence, and limiting effects of the symptoms based on all of the evidence in the record, including objective medical evidence, opinions from medical and non-medical sources, and factors listed in the regulations such as daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of medication; treatment of symptoms other than medication; and any measures used to relieve the symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p at *4–7. The ALJ considers whether there are inconsistencies or conflicts in the evidence, and a claimant's symptoms will be determined to diminish the capacity for basic work activities to the extent that the alleged limitations and restrictions due to the symptoms can

reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4).

Here, the ALJ considered Plaintiff testimony that he had daily headaches since he was assaulted in 2010. (Tr. 16, 53–54, 56–58). He testified that these headaches were constant, but of varying intensity, usually increased by stress and anxiety. (Tr. 16, 56–57). He treated them by going to a quiet dark room and taking over-the-counter medication such as Advil or Tylenol. (Tr. 16, 57). He testified that once or twice a week the headaches were so severe he would not get out of bed. (Tr. 16, 57–58). The ALJ also considered Plaintiff's report that he had headaches since a head injury in 2020 that were of variable intensity, lasted all day, worsened with stress, and were sometimes associated with nausea, blurred vision, and sensitivity to light and sound. (Tr. 17, 279).

The ALJ found that Plaintiff had underlying medically determinable impairments that could reasonably cause some symptomology, but found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms was not entirely consistent with the evidence of record in terms of his alleged physical symptoms and functional deficits. (Tr. 17). In addition to the objective evidence, the ALJ considered Plaintiff's treatment history and his testimony at the hearing.

As the ALJ noted, the evidence supports that Plaintiff suffered a head injury in October 2010, was initially treated conservatively, and released from the hospital. (Tr. 17, 619). He returned a few days later because he had developed a subdural hematoma and underwent a craniotomy for evacuation of the hematoma. (Tr. 17–18, 637–38, 643–44, 658–60). Plaintiff reported headaches after discharge, and did reasonably well following discharge, other than one

10

possible seizure episode treated with Keppra. (Tr. 18, 654–55). By January 2011, he was weaned off of Keppra and he was cleared to return to work. (Tr. 18, 613–14, 622). Plaintiff continued to perform substantial gainful activity until he quit his job in February 2014. (Tr. 18, 182–83, 201, 222).

The ALJ then considered the very limited evidence of complaints or treatment for headaches. (Tr. 18–19). Plaintiff saw a neurologist. Dr. Bhat, in March 2015 for reported headaches, which were diagnosed as post-traumatic stress headaches, and he was prescribed nortriptyline. (Tr. 18, 349–52, 602–05). A June 2015 CT of head revealed no significant changes from a prior CT in February 2012. (Tr. 18, 343, 593). On follow-up in June 2015, Plaintiff reported he could not tolerate nortriptyline, and his medication was changed to venlafaxine. (Tr. 342, 590). When Plaintiff returned in August 2015, Plaintiff reported having daily mild headaches with only "occasional" bad headaches. (Tr. 18, 588). He reported "significant," "almost 80% improvement" with venlafaxine, with no side effects from the medication. (Tr. 18, 587).

Plaintiff returned to work at a level of substantial gainful activity in late 2017 and early 2018. (Tr. 18, 186, 267). Then, after a significant gap where there appears to be no evidence in the record for treatment of headaches, Plaintiff was hospitalized overnight in March 2018 for evaluation of intermittent chest pain and two weeks of worsening headaches. (Tr. 18, 414, 418–19, 421, 562–66). He denied significant symptoms, including weakness, sensory changes, or photophobia. (Tr. 18, 416, 562, 564). A CT of the head showed some chronic intracranial changes similar to February 2012 and June 2015, but no acute abnormality. (Tr. 18, 418, 560, 565). Plaintiff was treated with Mobic and intravenous hydration and discharged the next day. (Tr. 556–57).

Later in March 2018, Plaintiff reported continued headaches and was prescribed a trial of Topamax. (Tr. 476–78, 516–18). The next evidence in the record is from almost a year later, March 2019, when Plaintiff returned to Dr. Bhat, who recommended that he be weaned off Topamax and try nortriptyline, which the neurologist believed would help not only the headaches, but also anxiety and stress. (Tr. 18, 540, 544). This appears to be the last treatment record in evidence with Dr. Bhat. In February 2019, Plaintiff established care with Dr. Conway, with primary complaints related to intermittent, situational anxiety that was treated with Xanax. (Tr. 683–85). After a follow-up in June 2019 (Tr. 678–80), Plaintiff returned in November 2019 on follow-up for anxiety, but also reported daily headaches that he treated with over-the-counter Advil as needed. (Tr. 18, 1138). Dr. Conway recommended trying Depakote and noted that Plaintiff would "consider this". (Tr. 1140). As the ALJ noted, Plaintiff reported not using prescribed medications due to side effects, but there is no indication that Plaintiff ever restarted using prescription medication, even venlafaxine, which he had earlier reported worked very well without side effects. (Tr. 18, 587, 1138). When Plaintiff returned to Dr. Conway in January 2020, he did not report any issues with headaches and he was not taking Depakote. (Tr. 18, 1135–37).

Thus, the treatment records do not document either complaints or treatment consistent with the intensity, persistence, and limiting effects of headaches that Plaintiff alleged at the hearing. Rather, the record shows intermittent complaints and the absence of a treatment history that would support Plaintiff's allegations that he had frequent, debilitating headaches. Plaintiff did not continue a medication that appeared to work without side effects, and there are significant time periods with no significant complaints regarding headaches.

In arguing that the ALJ erred in her symptom evaluation, Plaintiff contends that the ALJ

was overly focused on the etiology of Plaintiff's headaches and argues that traumatic brain injuries can cause headaches that do not necessarily correlate with particular findings, such as with CT imaging. However, the ALJ's decision does not show an overemphasis on objective findings, but rather as discussed above, the ALJ evaluated the contemporaneous complaints and treatment history. (Tr. 17–18).

Plaintiff argues that the ALJ did not articulate what alleged symptoms were not credible. This is not true. The ALJ noted that Plaintiff alleged nausea, blurred vision, and sensitivity to light and sound. (Tr. 17). The ALJ then compared the symptoms with the medical evidence, noting that Plaintiff worked for years after his initial onset of headaches, had normal neurological evaluations, reported improvement, and denied sensory changes or photophobia. (Tr. 18). This Court finds that the ALJ reached a reasonable conclusion that the evidence was not consistent with the intensity, persistence, and limiting effects that Plaintiff alleged, and thus remand is not warranted on this issue.

Plaintiff also alleges that the ALJ erred in her evaluation of Plaintiff's daily activities. As the ALJ noted, in January 2019, Plaintiff reported activities including preparing simple meals, performing household chores such as cleaning and laundry, and going grocery shopping in the early morning to avoid crowds. (Tr. 19–20, 530). The ALJ found these activities demonstrated a greater level of physical and psychological function than Plaintiff alleged, and while not dispositive, illustrated a capacity to carry out high-level daily activities irrespective of his symptoms. (Tr. 19–20). The ALJ had already found that for three years after the alleged onset date—from 2011 to 2014—and again in late 2017 and early 2018, Plaintiff engaged in substantial gainful activity. (Tr. 13). The ALJ considered all of this evidence in evaluating

Plaintiff's statements, and found that the evidence of record did not support Plaintiff's testimony about the reasons he stopped working, such as needing work accommodations. (Tr. 17, 37–40, 220–23). Plaintiff asserts that the ALJ failed to consider some daily activities that he believes supports his inability to work, such as his "variable inability" to play a board game with his six-year-old daughter, as he sometimes stayed in bed all day due to headaches. (Tr. 58). Plaintiff apparently retained the ability to play board games when he didn't have severe headaches, and the evidence shows that his headaches had improved. Thus, there is no error in the ALJ's failure to discuss this bit of hearing testimony.

In any event, it is clear that the ALJ did not consider Plaintiff's ability to perform daily activities as proving that Plaintiff had the ability to perform full-time work, but appropriately considered them as one factor in her analysis. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). Thus, there is no basis for remand.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: April 18, 2022.

s/ William C. Lee
William C. Lee, Judge
United States District Court
